

Frederick P. Corbit
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| In re: | Case No. 19-01084-FPC13 |
|---|---|
| WILLIAM A. DALZIELL AND BARBARA E. DALZIELL, <br><br> Debtors. | **MEMORANDUM DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING CLAIM OF TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION** |

The debtors object to the $74,590.95 unsecured claim of Taylor, Bean & Whitaker Mortgage Corporation ("Taylor Bean").[1] (ECF No. 30) The objection is sustained because Taylor Bean's claim is stale and the debtors and other creditors would be prejudiced if it was allowed.

## FACTS

The material facts are undisputed. In September 2003, William Dalziell purchased a home in Nevada. Subsequently, Mr. Dalziell obtained two loans from Taylor Bean. Each loan was secured by a deed of trust against the Nevada home. The first deed of trust, recorded January 9, 2007, secured the obligations memorialized in a promissory note in the amount of $399,000.00 (collectively "First Loan Documents").

---

[1] Because the objection does not involve an issue delineated in FRBP 7001, an adversary proceeding is not required. Moreover, the parties stipulated on the record that this court should finally resolve the matter based on the record presented. (ECF No. 50)

MEMORANDUM DECISION ~ Page 1

The second deed of trust, recorded March 3, 2007, secured the obligations memorialized by a $57,000.00, 30-year note that required equal monthly installment payments ("Second Note"). The Second Note provides the final monthly installment is due no later than April 1, 2037. The Second Note contains the following relevant provisions:

> **4. BORROWER'S FAILURE TO PAY AS REQUIRED**
>
> …
>
> **(C) Default**
> If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
> Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
>
> …
>
> **5. THIS NOTE SECURED BY A DEED OF TRUST**
> In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated **March 01, 2007**, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

ECF No. 47, Ex. A. The deed of trust that secured the Second Note provides in pertinent part:

> **4. Charges; Liens.** Borrower shall perform all of Borrowers obligations under any … deed of trust … which has priority over this Security Instrument.
>
> …
>
> **10. Assignment of Miscellaneous Proceeds; Forfeiture.** … Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in

MEMORANDUM DECISION ~ Page 2

> Lender's judgment, could result in forfeiture of the Property, or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.

ECF No. 42, Ex. 2.

On March 25, 2008, a little over a year after making the second loan, Taylor Bean notified Mr. Dalziell that he was in default on the payments due under the First Loan Documents. (ECF No. 57, Ex. 3) Next, Taylor Bean recorded a notice of trustee sale on June 27, 2008, that provided "the total amount of the unpaid balance … is: $418,369." (ECF No. 57, Ex. 4) Since the total balance amount listed was significantly in excess of the face amount of the first note, it is unclear whether Mr. Dalziell understood the foreclosure included the obligations set forth in both the first and second notes.

A public trustee's sale occurred on July 16, 2008. Mr. Dalziell's Nevada home was sold, and a trustee's deed was recorded on August 1, 2008. The trustee's deed provides in part: "Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid of $298,000 in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said deed of trust." (ECF No. 57, Ex. 5) As a result of the trustee's sale, Mr. Dalziell no longer owned the Nevada home, and he made no more payments to Taylor Bean.

The foreclosure and the recording of the trustee's deed extinguished the second deed of trust. Nevada Revised Statute 107.080. The extinguishment of the second deed of trust was an "impairment of Lender's interest in the Property" and thus constitutes an event of default under the terms of the Second Note. On August 29, 2008, rather than demanding payment of the now-unsecured obligation that was in default, Taylor Bean "charged off" the $56,493.68 balance owed on the Second Note.[2] (ECF No. 42, Ex. 5)

---

[2] Lenders "charge off" a debt that is deemed unlikely to be collected, but a charge off does not necessarily mean the lender has waived its right to collect. Investopedia, *What is a Charge-Off* (January 31, 2018), https://www.investopedia.com/terms/c/chargeoff.asp.

In 2007, William Dalziell was married to Jaquelyn Dalziell but at some point they divorced, and William married Barbara Dalziell. William moved from Nevada and now lives with Barbara in Cheney, Washington.

It was not until March 7, 2019, more than ten years after the foreclosure, that Taylor Bean demanded payment on the Second Note. Subsequently, on April 26, 2019, William and Barbara Dalziell filed a chapter 13 bankruptcy petition in this court. In the bankruptcy proceeding, Taylor Bean claims that it is entitled to $74,590.95, an amount that includes $57,000 of the balance that remained "unpaid," plus $21,473.86 of interest that accrued over five years. *See* claim 4-1.

The debtors' proposed chapter 13 plan provides for payment in full of all claims excepting Taylor Bean's. As to Taylor Bean's claim, the debtors objected. The resolution of the objection is critical to the debtors' financial reorganization because their chapter 13 plan is not feasible if Taylor Bean's claim is allowed but is ready for confirmation if Taylor Bean's claim is denied.

## DISCUSSION

**A.    Choice of Law.**

As recognized by the debtors and Taylor Bean, both Nevada and Washington have a six-year statute of limitations for written contracts. NRS 11.190(1)(b); RCW 4.16.040(1).[3] Citing the Nevada case of *Taylor Bean & Whitaker Mortgage Corporation v. Vargas*, 2017 WL 6597161 (Nev. Sup. Ct.), the debtors argue Taylor Bean's claim is barred by the six-year statute of limitations.[4] Taylor Bean counters that Washington law applies and therefore, because in

---

[3] The statutes are very similar. NRS 11.190(1)(b) generally provides a six-year limit for "[a]n action upon a contract, obligation or liability founded upon an instrument in writing." RCW 4.16.040(1) generally provides a six-year limit for "[a]n action upon a contract in writing, or liability expressed or implied arising out of a written agreement."

[4] The Nevada Supreme Court held the six-year statute of limitations period begins to run on the date a lender knows or should know of facts constituting a breach of a written contract. In that Nevada case, the lender discovered the facts constituting a breach less than six years before commencing an action, so the statute of limitations had not run. By contrast, in this case, Taylor Bean knew of facts constituting a breach by, at the latest, August 2008. Taylor Bean took no action until 2019, well outside of the Nevada six-year statute of limitations. As a result, if Nevada law applied, Taylor Bean's claim would arguably be barred by the applicable six-year statute of limitations.

MEMORANDUM DECISION ~ Page 4

Washington the statute of limitations period runs from the default on each installment from the time it becomes due, Taylor Bean is entitled to collect all installments less than six years past due. *See Herzog v. Herzog*, 23 Wn.2d 382, 388 (1945).

In this case, because the Second Note does not include a choice of law provision, the court follows the Restatement of Conflict of Laws to determine which state's statute of limitation applies. *In re Sterba*, 852 F.3d 1175, 1179 (9th Cir. 2017). The Restatement instructs in part that, "[a]n action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state." Restatement (Second) of Conflict of Laws § 142 (1988). Mr. Dalziell now lives in Washington and the forum for this proceeding is in Washington. Therefore, Washington's statute of limitations applies to this case. Nevertheless, a careful review of Washington law reveals that Taylor Bean's claim is barred in Washington.

### B. Washington's Statute of Limitations on Installment Notes.

In 1945, the Washington State Supreme Court concluded that when recovery is sought on an installment note, "the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it."[5] *Herzog*, 23 Wn.2d at 388. Taylor Bean argues for the application and extension of this holding to this case. However, as set forth in more detail below, Taylor Bean's argument is not persuasive.

The Washington Supreme Court may someday clarify its holding in *Herzog*, or the Washington legislature may amend RCW 4.16.040(1), because lending instruments have significantly changed in the 74 years since *Herzog* was decided.[6]

---

[5] But if an obligation that is to be paid in installments is accelerated, the entire remaining balance becomes due, and the statute of limitations is triggered for all installments that had not previously become due. *4518 S. 256th v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 434-35 (2016). In this case, no evidence was presented that Taylor Bean accelerated the installments set forth in the Second Note.

[6] The lending industry has changed dramatically since the *Herzog* court reviewed a 1923 installment agreement. Today, 30-year mortgages are typical. By contrast, before the Great Depression residential mortgages were short term (typically five to ten years) and had very low loan-to-value ratios—often 50% or less. In response to the Great Depression, the federal government intervened in the housing finance market and changed the terms of mortgages, converting variable-rate, short-term, non-amortizing mortgages into fixed-rate, long-term (20-year), fully amortizing mortgages. In 1948, three years after *Herzog* was decided, the maximum term of mortgages rose to 30 years. Richard K. Green & Susan M. Wachter, *American Mortgage*

Nevertheless, without clarification or amendment, the *Herzog* case does not lead to the result Taylor Bean wants in this case.

**C.    Cases Relied Upon by Taylor Bean are Distinguishable.**

The three recent cases relied upon by Taylor Bean differ from this case in that at the time the parties' dispute came before the court, the installment note obligations were secured by a deed of trust on the borrower's home. *See, 4518 S. 256th v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423 (2016); *Edmundson v. Bank of America, N.A.*, 194 Wn. App. 920 (2016); and *U.S. Bank National Association v. Ukpoma,* 8 Wn. App. 2d 254 (2019). In each of these three cases, the borrower was attempting to enjoin their lender from proceeding with a nonjudicial deed of trust foreclosure and, in each case, the lender prevailed and was allowed to proceed with the foreclosure.

The equities of the cases cited by Taylor Bean differ from the instant case in two material respects. First, the lenders were fighting to keep their collateral. Here, Taylor Bean has already foreclosed on the Nevada home that served as the collateral for both its first and second loan. Second, in Washington where there is only one note secured by one deed of trust, once a lender completes a nonjudicial foreclosure, it has no right to pursue a deficiency claim against the borrower. *See* RCW 61.24.100(1). However, here, since there were two deeds of trust on the Nevada property and only the first deed of trust was foreclosed, Taylor Bean argues that it can pursue an unsecured claim for the balance due on the second note. In sum, in the *4518 S. 256th, Edmundson* and *U.S. Bank* cases, the lenders sought only their collateral, contrasted by this case in which Taylor Bean has already foreclosed on its collateral, and now, eleven years after the foreclosure, demands more.[7]

---

*in Historical International Context*, 19 Journal of Economic Perspectives 93, 94-96 (2005). Furthermore, debt buying, born in the 1980s, has become a big industry and companies routinely buy—for pennies on the dollar—old loans that original lenders have charged off. *See* Abby Clement, *Debt Buying and Selling: My How You've Grown*, 17 Co. L. Bull. 8 (2002).

[7] Neither Taylor Bean nor the debtors address the second clause of the Herzog holding. The Herzog court held that the statute of limitations runs from the date each installment comes due or "from the time an action might be brought to recover it." *Herzog*, 23 Wn.2d at 388. Here, it could be argued that on July 16, 2008, when the collateral was impaired, an action could be brought to recover all obligations evidenced by the Second Note.

MEMORANDUM DECISION ~ Page 6

### D.     Doctrine of Laches.

Washington law provides that undue delay in pursuing a claim can bar recovery. *See Cedar West Owners Ass'n v. Nationstar Mortg., LLC*, 7 Wn. App. 2d 473, 489 (2019). Specifically, lenders "must act diligently to pursue and perfect nonjudicial foreclosure remedies" under the Deeds of Trust Act once they have transmitted a notice of default to a borrower. *Id.* The requirement that lenders must act diligently to pursue nonjudicial foreclosure, considered together with Washington law on the doctrine of laches, leads this court to conclude that under the present facts, Taylor Bean's claim must be denied.

The doctrine of laches is controlled by state law. *See Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949). The purpose of laches is to prevent injustice and hardship. *Johnson v. Schultz,* 137 Wn. 584, 589 (1926) (quotation omitted). Taylor Bean argues against application of laches, asserting that the doctrine should generally not be used to impose a shorter time period than the relevant statute of limitations. *See Auve v. Wenzlaff*, 162 Wn. 368, 374 (1931). However, the application of laches depends on the particular facts and circumstances of each case. *Lopp v. Peninsula Sch. Dist. No. 401*, 90 Wn.2d 754, 759 (1978). Accordingly, Washington courts have applied laches despite an applicable statute of limitations when a "special reason is shown why a shorter period should be enforced," or "some controlling equity" applies, or the facts present "highly unusual circumstances." *Auve*, 162 Wn. at 374; *Roger v. Whitham*, 56 Wn. 190, 195 (1909); *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 375 (1984).

The facts presented in this case constitute highly unusual circumstances and the controlling equities compel this court to apply laches to bar Taylor Bean's claim. In Washington, the elements of laches are (1) knowledge or reasonable opportunity for discovery of the cause of action, (2) an unreasonable delay in commencing the action, and (3) damage resulting from the unreasonable delay.[8] *Lopp*, 90 Wn.2d at 759.

---

[8] Washington law on laches is consistent with federal law and the laws of other states. *See, e.g., Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) (reciting the two elements of laches as (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting it); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2946 at 117 (2d ed. 1995) ("[L]aches does not result from a mere lapse in time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced.").

### 1. Knowledge or Reasonable Opportunity for Discovery of the Cause of Action.

Taylor Bean was the beneficiary or servicer on the notes secured by the first and second deeds of trust on William Dalziell's Nevada home.[9] Therefore, when the first deed of trust was foreclosed in the summer of 2008, Taylor Bean knew at that time that Mr. Dalziell was in default on the Second Note. Accordingly, Taylor Bean had a reasonable opportunity (more than ten years) to pursue a cause of action on the Second Note but did not.

### 2. Unreasonable Delay in Commencing the Action

In August, 2008, Taylor Bean charged off the Second Note and had no contact with the debtors about the Second Note until March 2019. Taylor Bean has not provided any explanation for its failure to timely act on the Second Note. It was unreasonable for Taylor Bean to wait more than ten years after the foreclosure of the first deed of trust against Mr. Dalziell's home before making a demand on the Second Note. Moreover, this failure by Taylor Bean to timely act was more egregious than the lenders' respective delays in *4518 S. 256th*, *Edmondson*, or *U.S. Bank*. In those three cases, the default was a result of some missed installments, but here the default included the forfeiture of the lender's collateral, a default that could not be cured. Finally, the unreasonableness of the delay was compounded by the fact that, without any explanation, the notice of trustee's sale listed a balance due that was significantly greater than the face amount of the first note and it was reasonable for Mr. Dalziell to believe that the balances due on the first and second notes were included in the foreclosure.

### 3. Damages Resulting from the Unreasonable Delay

The debtors and their other creditors are prejudiced by Taylor Bean's unreasonable delay. Had Taylor Bean provided timely notice after the foreclosure that it intended to collect on the Second Note, Mr. Dalziell may have remained in Nevada, where he could argue that Taylor Bean's claim for the balance due on the Second Note would be barred by the applicable statute of limitations.[10]

---

[9] There is some confusion as to the identity of the beneficiary of the first deed of trust at the time of the foreclosure, but it was admitted at oral argument that, at the time of the foreclosure, Taylor Bean was the servicer of both the first and second notes.

[10] *See* Fn. 4, *supra*.

Also, the debtors have not filed bankruptcy to discharge their valid debts. Instead, they filed a chapter 13 bankruptcy petition and have proposed a 100% payment plan.[11] Had Taylor Bean provided the Dalziells with timely notice of its intent to collect on Second Note, the debtors may not have incurred other debts that cannot be paid in full if Taylor Bean's claim is allowed. If Taylor Bean's claim is allowed, the debtors' plan cannot be confirmed, and the debtors and their other creditors would be prejudiced.

## CONCLUSION

Under the particular facts of this case, it is unreasonable and prejudicial to the debtors, and their creditors who have recent claims, to allow Taylor Bean now to assert a claim that lay dormant for more than ten years. Therefore, it is ordered that Taylor Bean's $74,590.95 claim is denied. Finally, since Taylor Bean's claim has been denied, the debtors' chapter 13 plan is feasible and will be confirmed.

---

[11] The debtors list other unsecured claims of $35,181.71 that will be paid if the debtors' chapter 13 plan can be confirmed and consummated. (ECF No. 1)